UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HENRY WALLACE                             CIVIL ACTION

VERSUS                                    NO: 01-579

MEDICAL CENTER OF LOUISIANA               SECTION: "J" (4)
AT NEW ORLEANS, ET AL

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came on for trial before the Court, sitting without a jury, on February 17, 2009. At the conclusion of testimony, the Court took the matter under submission. Having considered the testimony and exhibits submitted at trial and the applicable law, the Court issues the following Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52(a).[1]

---

[1] This matter was previously tried in a bench trial before Judge Porteous of this Court and taken under submission. However, no written Findings of Fact and Conclusions of Law were ever issued. As a result, the matter was reset for trial in this section. At the conclusion of this second trial the parties agreed to submit the entire transcript of the first trial as an exhibit to be considered by the Court in rendering this decision.

**FINDINGS OF FACT**

- Plaintiff Henry Wallace, an African American male, was employed by the Medical Center of Louisiana at New Orleans ("MCLNO"), and was a state employee.

- The state Civil Service Commission adopts a uniform pay and classification plan which consists of job specifications that describe, in general terms, the duties an employee must perform in order to be allocated, or placed, within a particular job. Additionally, the plan consists of GS levels of pay with a pay minimum and a pay maximum assigned to each job. This pay and classification plan applies only to state classified employees.

- Civil Service Rule 4.1(d)(1) permits the Director of the Department of Civil Service to authorize the hiring of an employee in an unclassified position. An employee in an unclassified position is not subject to the uniform pay and classification plan.

- In 1992, the state of Louisiana acquired the Hotel Dieu hospital in New Orleans. Hotel Dieu was merged with Charity Hospital and the combined organization is now known as MCLNO. Prior to the merger the plaintiff worked for Charity Hospital.

- Prior to the merger both Hotel Dieu and Charity Hospital each had its own Chief Financial Officer ("CFO"). Joseph

2

Jankite, a Caucasian male, was the CFO of Charity Hospital. Joel Sellers, a Caucasian female, was the CFO of Hotel Dieu.

- During the merger process Jankite was initially appointed to the unclassified position of Director of Fiscal and Business Affairs/CFO. During this one-year unclassified appointment, made pursuant to Civil Service Rule 4.1(d)(1), Jankite was paid a salary of $7,084.00 per month, or $85,000.00 annually.
- Jankite's unclassified position was extended for another five months until the decision was made to make Sellers the new CFO of the merged hospitals. As a result of that decision, Jankite resigned effective June 30, 1994.
- The position that Jankite had held was replaced by the Civil Service with the new position of Administrative Director 5. Although the Civil Service named the position Administrative Director 5, the merged hospital considered this to be the position of its CFO. As of January 1, 1995, the Civil Service declared that this position occupied state classification level GS-24 with a corresponding maximum salary of $4,938.00 per month, or $59,256.00 annually.
- On January 1, 1995, Sellers became the CFO of the merged hospital. She was detailed to the Administrative Director 5 position in the classified system. However, because her previous position was with a private employer and she had

3

been paid a salary higher than the GS-24 level authorized by the Civil Service, she was entitled to a "red circle rate" at the GS-24 level. This meant that even though she held a position in the classified system at the GS-24 level, she was entitled to continue to be paid her prior private salary of $8,497.00 per month, or $101,964.00 annually. Sellers was permitted to maintain this higher salary for 24 months after which period her salary would have to be reduced to comply with the GS-24 level classified system pay scale. Instead of having her salary reduced to the classified system level, Sellers chose to resign effective February 9, 1996.

- On November 23, 1995, once it was known that Sellers was going to resign, a request was made by the hospital for a promotional appointment to the classified position of Acute Hospital Associate Administrator 3, which the hospital considered to be the CFO position, at a level of GS-25. That request was approved by the Civil Service. The GS-25 level has a higher salary than the GS-24 level.

- On January 17, 1996 a recommendation was made by the hospital for the plaintiff to takeover the role of acting CFO. Prior to that time the plaintiff held the classified position of Account Manager 3, which the hospital considered to be the Director of Finance. The plaintiff would be

4

temporarily detailed to the Acute Hospital Associate Administrator 3 position. The detail could be terminated at any time and the plaintiff returned to his prior classified position. At that time it was also recommended that six of the departments that had been reporting to the CFO be reassigned so that they were not reporting to the plaintiff as acting CFO.

- Initially, the Civil Service rejected the detailing of the plaintiff to the Acute Hospital Associate Administrator 3 position because the Civil Service did not believe that the plaintiff was doing that type of work. In other words, the Civil Service did not believe that the plaintiff was doing the work of an acting CFO. Instead, the Civil Service believed that the plaintiff was still doing the work that fell within his prior job classification of Account Manager 3.

- The hospital disagreed with the Civil Service's assessment and requested a desk audit of the plaintiff's job duties. After ongoing correspondence between the hospital and the Civil Service an audit was finally completed. Following the audit, the Civil Service determined that the plaintiff was in fact completing the work of the acting CFO. The Civil Service issued an Agency Final Disposition Action Report dated May 22, 2007 which retroactively approved the

plaintiff's detail to the Acute Hospital Associate Administrator 3 classified position effective February 22, 1996. This detail moved the plaintiff from a classification level of GS-24 in his old position to a GS-25 level in the acting CFO position. This meant a 7% increase in the plaintiff's salary. In the new position the plaintiff made approximately $63,000.00 annually.

- On August 9, 1996 the plaintiff sent a memo to Ron Broadus, the hospital's Director of Human Resources, requesting that he be placed in an unclassified position as CFO with a salary of $90,000.00 a year, retroactive to the time he became acting CFO on January 22, 1996.
- Ron Broadus responded to the request by email on August 9, 1996 and informed the plaintiff that the Civil Service had established a classified position for the CFO, that the unclassified position that had been held by Jankite no longer existed, and that since the Civil Service had established a classified position for the CFO they would not allow an unclassified position for that same job.
- After requesting that his position be deemed unclassified and having that request rejected, plaintiff continued to work as the acting CFO in a classified position until December 7, 1998 when his temporary detail to that position was terminated. At that time the plaintiff returned to his

- prior classified position of Account Manager 3 at the GS-24 level.
- During 1997 the hospital was moved out of the state employee system and into the LSU employee system. The LSU system had greater flexibility for the creation of unclassified positions for faculty and professionals. Under the LSU system unclassified positions could be created without the use of Civil Service Rule 4.1(d)(1).
- In 1998, an unclassified position of Director of Patient Billing was created and approved by the Civil Service pursuant to Rule 4.1(d)(1) on a temporary basis. The new position was created in response to a backlog in billing that was causing cash flow issues for the hospital. A decision was made on the state level to create this temporary position to send someone to New Orleans to address the billing backlog.
- Effective June 29, 1998, Helen Bates, a Caucasian female, was placed on leave without pay from her classified position of Accountant Manager 2, a GS-22 level position, and was appointed to the unclassified temporary position of Director of Patient Billing. The unclassified position had a salary of $5,875.00 per month, or $70,500.00 annually.
- During 1998, an unclassified position of Director of Patient Financial Services was created in the LSU system. This

unclassified position was not created by the Civil Service pursuant to Rule 4.1(d)(1).

- On January 7, 1999, Bates returned from leave without pay to her prior classified position of Accountant Manager 2, which was in the state employee system. She promptly resigned from that position and retroactively took the unclassified permanent position of Director of Patient Financial Services, effective December 1, 1998. This position was part of the LSU system. Bates' salary in the permanent unclassified position was the same as her salary had been in the temporary unclassified position of Director of Patient Billing. This salary was higher than plaintiff had been paid in his detailed position as acting CFO.
- When the plaintiff's detail ended in December 2007, Bates took over the job responsibilities that the plaintiff had as the acting CFO. MCLNO considered Bates to be the CFO, however Bates was never placed in the CFO or acting CFO position in the LSU or state employee systems. The LSU system human resources department only became aware that Bates was considered the CFO by MCLNO by reading the MCLNO newsletter.
- Bates was never officially placed in the position of CFO or acting CFO. She continued to officially be placed in the unclassified position of Director of Patient Financial

Services within the LSU system. In that position she continued to make a higher salary than the plaintiff did when he was detailed to the classified position of Acute Hospital Associate Administrator 3.

**CONCLUSIONS OF LAW**

The plaintiff bases his claim of discrimination on the disparity in pay between himself and his predecessors and successor.² The plaintiff contends that he was discriminated against in two ways. First, the plaintiff contends that he was subject to race-based discrimination under Title VII because he, as an African-American, was paid less than Caucasian individuals who did the same job. Second, the plaintiff argues that he was subject to gender-based discrimination under the Equal Pay Act because he, as a male, was paid less than female individuals who did the same job.

**I. Title VII Claim**

Title VII provides: "It shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,

---

²The plaintiff has made no claim in this case for discrimination based on his being removed from the position of acting CFO. His only claim relates to the disparity in pay.

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In order to prevail on a Title VII race discrimination claim the plaintiff must show that he was treated in a manner which "but for" race, would have been different. City of Los Angeles Dept. of Water and Power v. Manhart, 435 U.S. 702, 711 (1978). A successful Title VII claim requires a showing of intentional discrimination. Peters v. City of Shreveport, 818 F.2d 1148, 1153 (5th Cir. 1987), cert. denied, 485 U.S. 930 (1988), abrogated on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

There is a three part test to determine whether intentional discrimination exists. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Taylor v. United Parcel Service, Inc., 554 F.3d 510, 522-23 (5th Cir. 2008). First, the plaintiff must make out a prima facie case of discrimination by showing that he was a member of a protected class and that he was paid less than an employee performing work requiring substantially the same responsibility who was not a member of a protected class. Taylor, 554 F.3d at 522 (citing Uviedo v. Steves Sash and Door Co., 738 F.2d 1425, 1431 (5th Cir. 1984). The plaintiff must show that "his circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class." Id. at 523. If the plaintiff can pass this hurdle then under the McDonnell Douglas framework an inference of discrimination is

created and the burden shifts to the employer to provide a non-discriminatory reason for the disparity in pay. Id. at 522 (citing Ross v. Univ. of Texas at San Antonio, 139 F.3d 521, 525 (5th Cir. 1998). If the employer shows a non-discriminatory reason for the pay, then the burden shifts back to the plaintiff to prove that the employer's reason is pretextual. Id.

First, it is clear to the Court that the plaintiff was a member of a protected class. The plaintiff was the first African-American CFO in the history of the hospital and almost all of the other department leaders in the hospital were Caucasian. However, the plaintiff has not shown that the circumstances of his employment as acting CFO were substantially similar to those of the Caucasian employees who preceded and succeeded him as CFO. In attempting to prove his prima facie case, the plaintiff relies on a comparison between his pay and that of Joseph Jankite and Joel Sellers who were CFOs before the plaintiff and Helen Bates who was CFO after the plaintiff. All of these individuals are Caucasian, however they had differing responsibilities. Jankite was the CFO of the hospital for a little over a year during the initial merger phase. He was the first CFO to have the responsibility of overseeing the merger of Charity Hospital and Hotel Dieu. He held the job until a decision was made to make Joel Sellers the permanent CFO of the merged hospital. Sellers became CFO in 1994 and had

11

responsibility for the entire merged entity.  When the plaintiff
became acting CFO at the beginning of 1996, six departments that
had reported to Sellers were specifically moved out of his area
of responsibility to lessen his work burden.  When Helen Bates
replaced the plaintiff after his detail was terminated, Bates not
only took on the responsibilities of the plaintiff's former
position of acting CFO but also remained as the Director of
Patient Financial Services, a position for which the plaintiff
had never had responsibility.  Additionally, unlike Jankite,
Sellers, and Bates, the plaintiff was never the permanent CFO.
He was only temporarily detailed to the position of acting CFO.
Finally, it is clear to the Court that the CFO position and
commensurate responsibilities were in constant flux over this
period of time.  As the evidence at trial showed, the CFO at
MCLNO was a high ranking official with varying responsibilities
for each occupant of the position.  During the tenures of the
plaintiff, Jankite, Sellers, and Bates numerous different issues
arose, including the merger of Charity Hospital and Hotel Dieu
and the subsequent major billing and cash flow problems.  The
plaintiff has not shown that he had substantially similar
responsibilities to any of the Caucasian employees who also held
the CFO position.

   Even if the plaintiff could make out a prima facie case, the
defendant provided a plainly non-discriminatory reason for any

pay disparities which the plaintiff did not show to be in any manner pretextual.  The plaintiff's pay as acting CFO was set by the state classified employee system approved by the Department of Civil Service.  The plaintiff was a classified employee and thus his pay was restricted by the Civil Service.  Joseph Jankite made a higher salary because he was placed in a temporary unclassified position by the Civil Service.  This allowed his salary to be set outside of the Civil Service system.  Joel Sellers was actually placed in a classified Civil Service position that had a lower GS level, and thus a lower salary range, than the classified position held by the plaintiff.  The only reason why Sellers actually received a higher salary than the plaintiff was because she qualified for a "red circle rate" as result of her prior private employment.  This "red circle rate" was solely a function of the Civil Service system and in no way can be attributed to any racial discrimination.  Helen Bates was never even officially placed into the position of CFO.  Her higher salary was based on her unclassified position as the Director of Patient Financial Services.  Additionally, Bates' unclassified position was created in the LSU system which provided greater flexibility for the creation of unclassified positions with higher salaries.  At the time the plaintiff became acting CFO the hospital was not operating under the LSU system and no such flexibility existed.  Ultimately, the plaintiff's

salary was a product of the classified (and unclassified) salary system that he was subject to as a state employee. His salary was determined based on this system, not his race.

It should also be noted that initially the Department of Civil Service resisted increasing the plaintiff's salary when he was detailed to the acting CFO position. The plaintiff's employer, the defendant in this case, pressed the Department of Civil Service for over a year to increase the plaintiff's salary commensurate with his work responsibilities. This effort proved fruitful when the Civil Service retroactively increased the plaintiff's pay to the GS-25 level. Given the defendant employer's prior advocacy on behalf of the plaintiff and his salary it is difficult to conceive that the plaintiff was the victim of a racially discriminatory pay differential at the hands of the same employer.

**II. Equal Pay Act Claim**

The plaintiff has also claimed in this case that he was subject to gender-based pay discrimination in violation of the Equal Pay Act. The Equal Pay Act prohibits discrimination in pay on the basis of sex. 29 U.S.C. § 206(d)(1). In order to prove a prima facie case of wage discrimination, the plaintiff must show that (1) the employer is subject to the Equal Pay Act; (2) the plaintiff performed work in a position requiring equal skill,

effort, and responsibility under similar working conditions; and (3) the plaintiff was paid less than the employee of the opposite sex providing the basis for comparison. Chance v. Rice Univ., 984 F.2d 151, 153 (5th Cir. 1993). Once a prima facie case is established, the burden shifts to the defendant to prove an affirmative defense that the wage differential is justified by "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1); Siler-Khodr v. Univ. of Texas Health Science Center San Antonio, 261 F.3d 542, 546 (5th Cir. 2001).

In order to prove his prima facie case the plaintiff relies on a comparison with two female employees, Joel Sellers and Helen Bates. However, as discussed above the plaintiff did not perform a similar job, with similar responsibilities as either Sellers or Bates. After the merger of Charity Hospital and Hotel Dieu, Sellers was chosen as the CFO of the merged entity. The plaintiff replaced Sellers when he was detailed to the acting CFO position. At the time the plaintiff was detailed to the acting CFO position six departments that had reported to Sellers when she was the CFO were reassigned specifically to lessen the burden on the plaintiff. As a result, the plaintiff did not perform the same job, requiring the same effort and responsibility as Sellers. Helen Bates replaced the plaintiff when his detail to

15

the acting CFO position was terminated.  Bates was never officially placed in the CFO position.  Instead, she was given the CFO responsibilities in addition to the responsibilities she already bore in her position as the Director of Patient Financial Services.  Bates' salary while she was performing as CFO was based on her official position of Director of Patient Financial Services.  The Director of Patient Financial Services position was created as an unclassified position in the LSU System to employ an individual to oversee the problematic billing issues of the hospital.  Thus, when Bates took over the role of CFO, she not only was undertaking responsibilities in addition to her position as Director of Patient Financial Services, but was being paid based only on that official position of Director of Patient Financial Services.

    Finally, even if the plaintiff was able to establish a prima facie case, the defendant has a valid affirmative defense based on the Civil Service and LSU salary systems.  The pay differential between the plaintiff and Sellers and Bates was not based on sex, but rather was a result of a valid classification system.  The plaintiff was detailed to the position of acting CFO at the GS-25 level under the state's Civil Service system.  Sellers was also placed in a classified position under the state's Civil Service system.  In fact, Sellers, in her role as permanent CFO of the merged hospital, was placed in a classified

16

position at the GS-24 level.  Sellers classified position would have actually paid her less than the plaintiff.  The only reason that Sellers actually made a higher salary than the plaintiff was because she was eligible for a "red circle rate" since she was previously in private employment at a salary higher than her classified rate.  Unfortunately, the plaintiff was not eligible for such a "red circle rate" under the classified system.

Similarly, Bates' higher salary was the result of the classified system.  Bates was never placed in the official position of CFO.  Instead, when she took on the responsibilities of the CFO position her salary continued to be based on her unclassified position as Director of Patient Financial Services.  Bates' unclassified post was created under the LSU system, which provided greater flexibility for the creation of unclassified positions.  When the plaintiff was detailed to the acting CFO position the hospital was not even operating as part of the LSU employee system.  Most importantly, as a result of Bates holding an unclassified position her salary was not restricted to a specific GS level as was the plaintiff's salary.  This is a direct result of the classification system, not the gender of the individuals involved.

The plaintiff has not proven his claim of discrimination under either Title VII or the Equal Pay Act.

New Orleans, Louisiana, this 2nd day of April, 2009.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE